The motion for judgment on the pleadings will be granted and, in view of the holding of this Court in Everly v. Zepp, 57 F.Supp. 303, judgment will be entered in the sum of $444 treble damages plus $50 as reasonable attorney's fees and costs.

### BROOKS et ux. v. KALISIEWICZ et ux.

No. 3412.

District Court, E. D. Pennsylvania.

Jan. 19, 1945.

### PIERCE OIL CORPORATION et al. v. UNITED STATES.

No. 45442.

Court of Claims.

Jan. 8, 1945.

Eugene Untermyer, of Washington, D. C. (Edgar J. Goodrich and Guggenheimer, Untermyer & Goodrich, all of Washington, D. C., on the brief), for plaintiff.

John A. Rees, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

LITTLETON, Judge.

The Pierce Oil Corporation and its receivers, herein referred to as "plaintiff", brought this suit under section 821 of the Revenue Act of 1938, 52 Stat. 447, Title 26 U.S.C.A. Int.Rev.Code, § 3794 note, upon rejected claims for refund to recover $166,670.87 representing one-half of alleged accrued interest of 12 percent per annum from October 24, 1933, to August 30, 1935, which interest it is alleged accrued and was paid for the period January 13, 1933, to August 30, 1935, upon additional income taxes. The several amounts making up the total sought to be recovered as interest paid are $70,601.53 for 1918, $81,156.61 for 1919, and $14,912.73 for 1920.

Section 821, supra, is as follows:

"Interest accruing after October 24, 1933, and before August 30, 1935, on delinquent income, estate, and gift taxes.

"Interest accruing after October 24, 1933, and prior to August 30, 1935, on delinquent income, estate, and gift taxes shall be computed at the rate of 6 per centum per annum. Any such interest accruing during such period which has been collected prior to the date of the enactment of this Act in excess of such rate shall be credited or refunded to the taxpayer, if claim therefor is filed within six months after the date of the enactment of this Act. No interest shall be allowed or paid on any such credit or refund."

The above-quoted section was included in the Revenue Act of 1938 as a Senate Amendment offered on the Senate Floor while the act was under consideration and was agreed to on April 9, 1938, at which time the following occurred (Cong. Record. Vol. 83, Part 5, p. 5174):

"Mr. King. Mr. President, I send to the desk an amendment, with an explanation of it which I ask to have printed in the Record.

"The Vice President. The amendment will be stated.

"The Chief Clerk. On page 369, between lines 7 and 8, it is proposed to insert the following new section: * * *

"Mr. Harrison. I have no objection to that amendment.

"The Vice President. Without objection, the amendment is agreed to; and, without objection, the explanation submitted by the Senator from Utah will be printed in the Record.

"The explanation is as follows:

"The purpose of this amendment is to reduce from 12 percent to 6 percent the interest rate in the case of a few taxpayers who during the depression were compelled to obtain extensions of time to pay their taxes. For many years the

Treasury in such cases compromised interest liability for 6 percent, and in 1935 the exclusive 12-percent rate was reduced to 6 percent on the recommendation of the Treasury. In the case of a comparatively few, however, the Treasury was prevented from compromising and was compelled to collect the 12 percent because of an opinion of the Attorney General rendered in October 1933. This amendment cures the discrimination against those few taxpayers and gives equal treatment to all."

Plaintiff's claims for refund of alleged accrued interest in excess of 6 percent which it claimed to have paid were grounded wholly upon the provisions of section 821, and the only facts relied upon in support of those claims consisted of a computation, the results of which are set forth in finding 12, and which was made under the circumstances and in the manner set forth in finding 18. The grounds and the facts stated and relied upon as a basis for this suit are the same as set forth in the refund claims in which plaintiff specifically disclaimed any desire, intention, or consent as to the reopening, disclaiming, setting aside, or modification of the offer of $2,035,721.77 in settlement and satisfaction of the controversy between the plaintiff and the Government with reference to plaintiff's entire liability for the taxable years 1918, 1919, and 1920.

The position of plaintiff as stated in its brief and argument is, in substance, that under section 821 it is entitled to a refund of delinquent interest which it alleges it paid in excess of 6 percentum on certain additional taxes for the period October 25, 1933, to August 29, 1935, both dates inclusive. It insists that this section is mandatory and that its right to recover the alleged accrued interest under the section is not affected by its accepted compromise offer of $2,035,721.77 in settlement and satisfaction of its entire liabilities for tax and interest with respect to the three years.

The position taken by counsel for the defendant is, in substance, first, that section 821 does not apply to this case because plaintiff did not pay any 12 percent statutory delinquent interest, as such, on additional taxes, but paid only a lump sum of $2,035,721.77 offered and accepted by the Government in compromise and settlement of plaintiff's entire tax and interest liability in respect of the years 1918 to 1920, inclusive, which amount of $2,035,721.77 was $6,465.90 less than the total of the deficiencies in tax without interest claimed by the Government and computed in accordance with an opinion of the Board of Tax Appeals; second, that section 821 was not intended to apply to a case where less than the full amount of tax and accrued delinquent interest thereon of 12 percent was paid; and, third, that the compromise and settlement was final and cannot be reopened or modified under section 821.

Upon the facts disclosed by the record and set forth in the findings we are of opinion that plaintiff is not entitled to recover.

By clear langauge, section 821 applies and was intended to apply, as shown by the explanation made in the Senate, only in those cases where the taxpayer paid in full his tax and also accrued statutory delinquent interest at 12 percent during the period from October 24, 1933, to August 30, 1935, by reason of failure to pay the taxes shown upon its return, or additional taxes assessed, within ten days after notice and demand. The purpose of the section was to give relief to "those few taxpayers" who, because of an opinion of the Attorney General of October 24, 1933 (38 Op.Atty.Gen. 94), had been unable to compromise such accrued 12 percent delinquent interest. That opinion is not of importance here; it did not apply to compromise settlements in proper cases, such as the case of this taxpayer, and it was so clarified October 2, 1934 (38 Op.Atty.Gen. 98), long before plaintiff's case was settled by compromise of the disputed tax and interest liability.

A clear indication of congressional intention would be necessary to justify an interpretation and application of section 821 so as to reopen compromise settlements of tax and interest liability where a lump-sum amount offered by the taxpayer as the most he could pay, and accepted on that ground, under authority to compromise, is less than the disputed tax without interest determined and claimed at the time of the offer. Indication of such an intent is entirely absent in the language and explanation of the section. On the contrary, it appears clear that Congress was legislating for the relief of those few taxpayers who were unable to compromise and settle their accrued statutory liability for the 12 percent delinquent interest, rather than for the relief of those taxpayers who could and did compromise and settle their liquidated though disputed tax and interest liability.

In this case the record discloses that the Commissioner of Internal Revenue made a final determination of deficiencies for 1918 to 1920, inclusive, and mailed to plaintiff notice thereof, and that plaintiff instituted a proceeding before the Board of Tax Appeals, now the Tax Court of the United States, for redetermination thereof. The Board delivered an opinion deciding the issues presented, and a recomputation thereafter made of the deficiencies in accordance with the opinion of the Board showed a reduction of $508,900.27 in the total of the deficiencies originally determined by the Commissioner and assessed, in the meantime, under a jeopardy assessment. The total of the deficiencies so recomputed was $2,042,187.67. Upon filing the recomputation with the Board plaintiff initiated negotiations with the Government for settlement of all matters relating to its liability with reference to the deficiencies, including interest for the three years, and indicated to the Government that if a settlement could not be agreed upon it would appeal the Board's decisions on certain issues. These negotiations continued for some time and culminated in plaintiff's lumpsum offer of $2,035,721.77 on February 18, 1936, which was renewed on March 31 with the offer of a specific amount, $27,819.20, in compromise of accrued delinquent interest at 12 percent and a penalty of 5 percent on the unpaid 1920 original tax—the unpaid original 1920 tax with accrued interest of 6 percent, totaling $472,182.80, had been paid in 1930 before the offers in compromise and settlement were made.

In the negotiations leading to plaintiff's offer of $2,035,721.77 and the acceptance thereof, plaintiff disputed certain issues decided by the Board; the Government stood on the deficiencies as recomputed on the Board's opinion and wanted to obtain those deficiencies, or as much thereof as plaintiff could pay. The settlement was therefore definitely a compromise of all liability with reference to the years 1918 to 1920, inclusive, for a lump sum, and not a compromise calling for payment out of the total sum offered of specific sums for specific liabilities on account of tax for each of the three years and interest in specific sums at certain rates for certain periods. If plaintiff had considered that it was making such a specific offer we think some mention would have been made in the offer, or in the negotiations, to such an allocation of the amount offered to tax and interest.

Plaintiff's offer quoted in finding 10 shows that plaintiff was not interested in the allocation or distribution of the amount of its offer by the Government. Plaintiff asked only that upon acceptance of the lump-sum offer the proceeding before the Board "be marked settled and that an appropriate order to that effect be entered in the Board"; that the jeopardy assessment against it "for principal and interest * * * for said calendar years be cancelled and annulled"; that the proceedings in the Board of the Pierce Petroleum Corporation for alleged transferee liability "be marked settled" and that an order be entered by the Board of no tax due in respect of such transferee liability; that the jeopardy assessment for principal and interest against the Pierce Petroleum Corporation, as transferee for 1918 to 1920, inclusive, "be cancelled and annulled"; and that the jeopardy assessment bonds and escrow surety agreements "be cancelled and annulled."

Plaintiff got exactly what it asked for in connection with the lump-sum amount of $2,035,721.77 offered and paid. The fact that the method, or mechanics, employed by the Government in closing the records of the proceeding before the Board and in the Collector's office differed somewhat from the way which plaintiff requested in its offer that they be closed is, in the circumstances, of no material importance in connection with the question whether plaintiff is entitled to recover any portion of the lump-sum amount which it paid. The evidence of record shows that whatever allocation or disposition might have been made by the Government, for record and bookkeeping purposes, of the amount offered and paid by plaintiff, it would have paid no more and no less (finding 18). The Government had a right to allocate or distribute the lump-sum amount offered and accepted in compromise and settlement of plaintiff's entire liability for the three years in any way it saw fit, since plaintiff made no allocation in its offer, and the allocation or distribution made by the Government did not prove that plaintiff was paying any specific sum as 12 percent interest as such. The proof shows that the matter of 12 percent delinquent interest in connection with the jeopardy assessment did not occur to the Government at-

torney handling the negotiations and settlement with plaintiff's attorneys until about two months after the settlement offer was agreed upon and made by plaintiff. This 12-percent interest matter then occurred to him only because someone else in the Interest Computation Section of the Bureau of Internal Revenue included it in the computation allocating plaintiff's lump-sum offer to so-called tax and interest.

Under plaintiff's offer as made and accepted and under the law relating to the finality of compromises, plaintiff was not in a position two years later to insist under section 821 of the Revenue Act of 1938 upon a return to it by the Government of $166,670.87 or of any amount of the sum paid in compromise and settlement on the sole ground that in a distribution computation made by the Government before plaintiff made payment the total sum of $972,-651.64, out of $2,035,721.77, was computed and distributed for bookkeeping purposes to interest, including delinquent interest at 12 percent in the amount of $473,927.89 computed for the three years from January 13, 1933, to August 30, 1935. Plaintiff must prove not only that it intended to pay the 12 percent interest as such but that it represented a liability and that it acually paid it. Plaintiff has failed to prove this.

The agreement signed by plaintiff and the Government on April 28, 1936, after plaintiff's offer had been accepted (finding 14), does not help plaintiff. In substance that agreement was for the purpose of promptly closing the transactions on the records of the Board and the Collector's office relating to the years 1918 to 1920, inclusive, and permitting plaintiff to pay $2,035,721.77, all as near simultaneously as possible on April 30, 1936.

The interest computation on which this suit is based was not furnished to plaintiff until November 26, 1936, nearly four months after payment, when a statement of the computation was mailed to plaintiff at its request by the Deputy Commissioner of Internal Revenue. This statement showed in detail the distribution of the $2,035,721.77 to amounts designated as tax, deficiency interest at 6 percent from February 26, 1926, to January 11, 1933, delinquent interest at 12 percent from January 13, 1933, to August 30, 1935, and deficiency interest at 6 percent from August 30, 1935 to April 30, 1936. The amount of $972,-651.64 so computed as interest plus amounts totaling $1,063,070.13, treated in the computation as tax for 1918 to 1920, inclusive, or as "a deficiency which is really a deficiency in payment," as it was described in the original computation, equaled plaintiff's offer of $2,035,721.77. For the reasons stated above we think plaintiff is not entitled to recover.

Plaintiff gave and the Government accepted bonds on May 17, 1934, "to stay the collection of the assessments hereinbefore specified in the manner provided for in Section 279 of the Revenue Act of 1926 [26 U.S.C.A. Int.Rev.Acts, page 210] and Section 273 of the Revenue Act of 1932 [26 U.S.C.A. Int.Rev.Acts, page 561]." The bonds referred to in the findings, although not given within ten days after the jeopardy notice and demand on January 13, 1933, were expressly made and accepted under section 273(f) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 562, and stayed the collection of the jeopardy assessment until April 30, 1936. The section mentioned gave the taxpayer the undeniable right to file a bond within ten days after notice and demand, and while the Government might refuse to accept a bond to stay collection after the 10-day period and proceed to enforce collection, there is no statutory prohibition against the giving and the accepting of a bond to stay collection after such period, and there is no provision that a bond so given and accepted will not be effective for the purpose of payment by the taxpayer of interest at the rate of 6 percent only. See sections 273(g) and(i), and 296 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, pages 563, 568. However, it is not necessary to decide what effect the giving of a bond after the 10-day period following notice and demand would, under the statute, have on the amount of interest collectible, or whether art. 1181, Reg. 77, insofar as it provides for collection of interest at 12-percent, is valid or invalid for we are of opinion that Congress did not intend by section 821 of the Revenue Act of 1938, upon which plaintiff bases this suit, to give a taxpayer a new remedy which it would not otherwise have for recovery of any portion of an amount offered and accepted in compromise and settlement of the Government's claim for taxes and interest, especially where the amount so offered and accepted is less than the Government's claim for taxes without interest.

Plaintiff's motion for a new trial is denied. The former findings and opinion are vacated and withdrawn, and the findings and opinion herein are this day filed, the former conclusion of law and judgment, which are included herein, dismissing the petition to stand. It is so ordered.

JONES, Judge, took no part in the decision of this case.